J. WILSON HUMBIRD et al. Trustees, v. BARBARA
E. HUMBIRD.

[No. 17, April Term, 1932.]

*Decided May 20th, 1932.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Albert A. Doub, Jr.,* with whom was *George Cochran Doub* on the brief, for the appellants.

*Richard S. Bell* and *Charles Z. Heskett,* submitting on brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

Trustees of a residuary estate under a will appeal in this case from the disallowance of claim made by them of a right

to deduct, from a distributive share of the income, interest accrued on a note of a deceased distributee, alleged to have been assumed by his widow, who succeeded as distributee in her own right, and is now the appellee. She denies ever having assumed the note of her husband, denies that there would have been any consideration to support assumption of it by her, and denies that her assumption of it would be enforceable if made, because it would be an undertaking to pay the debt or default of another, and there was no assumption of it in writing as required by the fourth section of the Statute of Frauds (Stat. 29 Car. II). The court below found the note to have been legally assumed by the appellee, but found that the trustees had been guilty of laches in failing to insist upon their right to the obligation for many years past, and could not now make the deduction sought.

The will of Sarah A. Humbird, who died in 1891, gave a one-sixth share of income under a trust of the residuary estate to John J. Humbird, and, upon his death without issue, then to his widow, Barbara Humbird, during her life or until her remarriage, and, John J. Humbird having died in 1908 without issue, his widow, the appellee, became entitled under this provision and has since been receiving this share of the income. In 1899, John J. Humbird borrowed from the trust estate $1,000, and gave his note for it, secured by the deposit of stock in an East End Land Company as collateral. John J. Humbird was less successful than other distributees, and from time to time J. Wilson Humbird, his cousin, and now one of the trustees in substitution for those named in the will, helped him with gifts of money, and promised that, when he should effect a sale of some coal land owned by him, he would give John J. Humbird half of the proceeds as a voluntary gift. Before the death of the latter, and at his request, J. Wilson Humbird promised that he would make the gift to the widow. The note for $1,000 remained unpaid at the time of the death of the husband. And, from this point in the history of the case, the testimony of J. Wilson Humbird and the widow is in conflict.

He testifies that he sold his land in 1917, and had $2,040 to give in fulfillment of his promise, but determined to pay from it to the estate the amount due on the note, giving the remainder to Mrs. Humbird, the widow. Mrs. Humbird, however, according to his testimony, persuaded him to give her the whole amount upon her assuming payment of the note, and he did so. He testified that she verbally agreed to pay the note, and that interest accruing on it subsequently was regularly deducted from her share of distributable income until the year 1931. Mrs. Humbird admits having received the gift of $2,040, but, as stated, denies having assumed the payment of the note, saying that she never knew of its existence before 1931, and she denies having had any knowledge of the deductions of interest from her distributive share of income before that year. Both agree that in 1931 she inquired, or complained, concerning the fact that she was not paid a full one-sixth share, and that she then refused to consent to the making of the deductions. Thereupon, in 1931, the trustees filed a petition praying that the principal and interest due on the note be ordered deducted from Mrs. Humbird's share in an accumulation of income then ready for distribution. After answer filed, and testimony taken in open court, the petition of the trustees were dismissed. There was a cross-petition filed by Mrs. Humbird for repayment of the interest deducted from her share in the past, and this cross-petition was dismissed, and an appeal from the dismissal taken; but counsel inform us that the appeal was subsequently dismissed.

The court below concluded that Mrs. Humbird had agreed to assume payment of the note in consideration of the making of the full gift to her. The evidence on this point of fact was in direct conflict, and almost equally clear and positive on both sides. The lower court had an advantage in the presence of the witnesses before it while testifying, and we find no justification for rejecting the conclusion reached. There seems to be confirmation for it in the facts that no interest of J. Wilson Humbird himself appears involved in the transaction, and he would have no reason for construct-

ing a false story. A disposition to make a present of $2,040 to the widow is, indeed, hardly compatible with any inclination to subject her to an unjust charge in favor of the estate.

We think there was legal consideration for her promise. It is true, as argued, that J. Wilson Humbird would seem to have had from the promise to the trust estate nothing to gain for himself in return for his gift as an individual; but no gain to him was necessary to a valid, sufficient, consideration to support that promise. It is not necessary that Mrs. Humbird receive her consideration from the trust estate to the benefit of which her promise redounds. "Consideration may be given to the promisor or to some other person. It may be given by the promisee or by some other person." *Amer. Law Inst. Restatement Contracts,* chap. 3, sec. 75 (2); 1 *Williston, Contracts,* sec. 114.

And the nature of that consideration seems to furnish the answer to the contention that the promise, if made, was one to answer for the debt or default of another, and, there being no writing, was unenforceable under the statute of frauds. The promise was made in consideration of a new act or promise made for the direct benefit of Mrs. Humbird induced by her promise, and one which would have been good consideration either for a promise to pay the debt of another or to pay the money without relation to any debt of another. And this seems within the exception to the clause of the statute requiring a writing. It is to be regarded as an original undertaking for the promisor's own benefit, not merely an answering for the debt or default of another. *Small v. Schaefer,* 24 Md. 143, 161; *Thomas v. Delphy,* 33 Md. 373, 380; *Dryden v. Barnes,* 101 Md. 346, 351, 61 A. 342; *Emerson v. Slater,* 22 How. (U. S.) 28, 16 L. Ed. 360; *Davis v. Patrick,* 141 U. S. 479, 487, 12 S. Ct. 58, 35 L. Ed. 826. We therefore concur with the conclusion of the lower court on this defense.

The decision that the defense of laches opposed an effectual bar to the claim of the trustees appears to have been based on a misconception of the testimony, which a study of the printed transcript removes. In its opinion, the lower court

took it to be a fact that no amount for interest on the note had been deducted by the trustees from Mrs. Humbird's share of the income between the years 1924 and 1931. There was a misstatement of this in the trustees' petition, or, at least, the testimony of both parties agrees that deductions had been made regularly up to a few months before the taking of testimony in 1931. The trustees omitted any items of deductions from their account covering the years 1923 to 1931, because, according to the testimony of J. Wilson Humbird, he assumed that, having only the promise Mrs. Humbird gave him, he could not enforce the charge. The controversy was in fact opened up by the remark of Mrs. Humbird on the inequality of payments on her share of income up to 1931. This correction in the facts having been made, there would seem to be no foundation left for the finding of laches and abandonment of the debt by the trustees. On this point, therefore, we come to a conclusion different from that of the court below.

*Decree reversed, with costs, and case remanded for further proceedings.*